FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 03, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PHILLIP M.,[1] | No. 2:20-cv-00381-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| | ECF Nos. 18, 19 |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 18, 19.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 18, and denies Defendant's motion, ECF No. 19.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

1    In reviewing a denial of benefits, a district court may not substitute its

2  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

3  1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

4  rational interpretation, [the court] must uphold the ALJ's findings if they are

5  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

6  F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

7  404.1502(a), 416.902(a). Further, a district court "may not reverse an ALJ's

8  decision on account of an error that is harmless." *Id*. An error is harmless "where

9  it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at

10  1115 (quotation and citation omitted). The party appealing the ALJ's decision

11  generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*,

12  556 U.S. 396, 409-10 (2009).

13                **FIVE-STEP EVALUATION PROCESS**

14    A claimant must satisfy two conditions to be considered "disabled" within

15  the meaning of the Social Security Act. First, the claimant must be "unable to

16  engage in any substantial gainful activity by reason of any medically determinable

17  physical or mental impairment which can be expected to result in death or which

18  has lasted or can be expected to last for a continuous period of not less than twelve

19  months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

20  impairment must be "of such severity that he is not only unable to do his previous

ORDER - 3

1  work[,] but cannot, considering his age, education, and work experience, engage in

2  any other kind of substantial gainful work which exists in the national economy."

3  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

4       The Commissioner has established a five-step sequential analysis to

5  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

6  404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

7  considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

8  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

9  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

10  404.1520(b), 416.920(b).

11       If the claimant is not engaged in substantial gainful activity, the analysis

12  proceeds to step two.  At this step, the Commissioner considers the severity of the

13  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

14  claimant suffers from "any impairment or combination of impairments which

15  significantly limits [his or her] physical or mental ability to do basic work

16  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

17  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

18  however, the Commissioner must find that the claimant is not disabled.  *Id.*

19       At step three, the Commissioner compares the claimant's impairment to

20  severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

1  a person from engaging in substantial gainful activity.  20 C.F.R. §§

2  404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

3  severe than one of the enumerated impairments, the Commissioner must find the

4  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

5  If the severity of the claimant's impairment does not meet or exceed the

6  severity of the enumerated impairments, the Commissioner must pause to assess

7  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

8  defined generally as the claimant's ability to perform physical and mental work

9  activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

10  404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

11  analysis.

12  At step four, the Commissioner considers whether, in view of the claimant's

13  RFC, the claimant is capable of performing work that he or she has performed in

14  the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

15  If the claimant is capable of performing past relevant work, the Commissioner

16  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

17  If the claimant is incapable of performing such work, the analysis proceeds to step

18  five.

19  At step five, the Commissioner considers whether, in view of the claimant's

20  RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 9, 2018, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of April 25, 2018.  Tr. 15, 102, 115, 241-53.  The applications were denied initially and on reconsideration.  Tr. 144-47, 156-63.  Plaintiff appeared

ORDER - 6

before an administrative law judge (ALJ) on September 26, 2019.  Tr. 35-89.  On

October 23, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who meets the insured status requirements through December 31, 2023, has not

engaged in substantial gainful activity since April 25, 2018.  Tr. 17.  At step two,

the ALJ found that Plaintiff has the following severe impairments: status-post

traumatic brain injury (TBI) and lumbar degenerative disc disease.  Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 19.  The ALJ then concluded that Plaintiff has the RFC to perform

light to medium work with the following limitations:

> [H]e can lift 35 pounds at a time occasionally and lift or carry 20 pounds at a
> time frequently.  He has no limitations on sitting, standing or walking.  He is
> limited to no climbing of ladders or scaffolds and no exposure to
> unprotected heights or hazardous machinery.

Tr. 19.

At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 23.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, acquired work skills that are transferable to

other jobs, and testimony from the vocational expert, there were jobs that existed in

significant numbers in the national economy that Plaintiff could perform, such as,

electric-tool repairer and extrusion-press operator.  Tr. 24.  Therefore, the ALJ

ORDER - 7

1    concluded Plaintiff was not under a disability, as defined in the Social Security

2    Act, from the alleged onset date of April 25, 2018, through the date of the decision.

3    Tr. 25.

4         On August 12, 2020, the Appeals Council denied review of the ALJ's

5    decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

6    purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

7    **ISSUES**

8         Plaintiff seeks judicial review of the Commissioner's final decision denying

9    him disability insurance benefits under Title II and supplemental security income

10   benefits under Title XVI of the Social Security Act.  Plaintiff raises the following

11   issues for review:

12        1.  Whether the ALJ conducted a proper step-five analysis;

13        2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

14        3.  Whether the ALJ properly evaluated the medical opinion evidence; and

15        4.  Whether the ALJ conducted a proper step-three analysis.

16   ECF No. 18 at 6.

17   **DISCUSSION**

18   **A. Step Five**

19        Plaintiff contends the ALJ erred by failing to conduct an adequate analysis at

20   step five.  ECF No. 18 at 17-20.  "[I]f a claimant establishes an inability to

ORDER - 8

1  continue [his] past work, the burden shifts to the Commissioner in step five to

2  show that the claimant can perform other substantial gainful work." *Burch v.*

3  *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (*citing Swenson v. Sullivan*, 876 F.2d

4  683, 687 (9th Cir. 1989)).  At step five, "the ALJ ... examines whether the claimant

5  has the [RFC] ... to perform any other substantial gainful activity in the national

6  economy." *Id.*  "If the claimant is able to do other work, then the Commissioner

7  must establish that there are a significant number of jobs in the national economy

8  that claimant can do." *Tackett*, 180 F.3d at 1099.  "There are two ways for the

9  Commissioner to meet the burden of showing that there is other work in

10  'significant numbers' in the national economy that claimant can do: (1) by the

11  testimony of a [VE], or (2) by reference to the Medical-Vocational Guidelines...."

12  *Id.*  "If the Commissioner meets this burden, the claimant is not disabled and

13  therefore not entitled to ... benefits." *Id.* (citation omitted).  "If the Commissioner

14  cannot meet this burden, then the claimant is disabled and therefore entitled to ...

15  benefits." *Id.* (citation omitted).

16       A claimant has transferable skills "when the skilled or semiskilled work

17  activities [the claimant] did in past work can be used to meet the requirements of

18  skilled or semi-skilled work activities of other jobs." *Renner v. Heckler*, 786 F.2d

19  1421, 1423 (9th Cir. 1986) (quoting 20 C.F.R. § 404.1568(d)(1)); 20 C.F.R. §

20  416.968(d)(1).  "A finding of transferability is most probable among jobs that

involve: (1) the same or lesser degree of skill; (2) a similarity of tools; and (3) a similarity of services or products." *Renner,* 786 F.2d at 1423 (citing 20 C.F.R. § 404.1568(d)(2)); 20 C.F.R. § 416.968(d)(2).

Based on the testimony of the VE, the ALJ found Plaintiff has transferable skills. Tr. 24. Although the ALJ determined Plaintiff's RFC was between light and medium work, at the hearing the VE testified that there were no medium exertion jobs that Plaintiff could perform with this RFC. Tr. 66. The ALJ therefore concluded a finding of not-disabled was directed under the framework of Medical-Vocational Rule 202.07, for light work. Tr. 25.

The Social Security regulations provide that when a claimant is closely approaching retirement age (age 60 or older) and "has a severe impairment(s) that limits you to no more than light work we will find that you have skills that are transferrable to skilled or semi-skilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

Because Plaintiff has transferable skills and is limited to light work, his case is controlled by Medical-Vocational Rule 202.07, which generally directs a finding of "not disabled," as discussed *supra*. However, as the Ninth Circuit has observed footnote two to Rule 202.07 "explicitly incorporates language from Rule 202.00(c)

that expands the circumstances under which claimants with transferable skills can be found disabled." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006); *see* 20 C.F.R. § 404, Subpt. P, App. 2, Rule 202.07 n.2.  The Court explained Rule 202.00(c) provides:

> However, for individuals of advanced age who can no longer perform … past work and who have … *only skills that are not readily transferable to a significant range of semi-skilled or skilled work* that is within the individual's functional capacity … the limitations in vocational adaptability represented by functional restriction to light work *warrant a finding of disabled*."

*Id.* at 1116-17 (emphasis in original) (citing 20 C.F.R. § 404, Subpt. P, App. 2, Rule 202.00(c)).

The Ninth Circuit has determined that for the ALJ to find the Plaintiff has transferrable skills to a "significant range of work," the ALJ must identify more than two jobs.  *See Lounsburry*, 468 F.3d at 1115; *Maxwell v. Saul*, 971 F.3d 1128, 1131-32 (9th Cir. 2020).  The Court has not determined a bright-light rule for the number of jobs required to constitute a significant range.  *Id.*

Here, based on the VE's testimony, the ALJ found that there were jobs in the national economy for a person with Plaintiff's RFC and his directly transferable skills; and that Plaintiff could perform work as an electric-tool repairer, which is light, skilled work, with 19,020 jobs nationally; and work as an extrusion-press operator, which is light, skilled work, with 74,490 jobs existing in the national economy.  Tr. 24, 64, 66-67.

ORDER - 11

1    The Court finds that the ALJ committed harmful error by finding that jobs

2    existed in significant numbers that Plaintiff could perform.  The Ninth Circuit has

3    determined that a Plaintiff who is of advanced age, can no longer perform his past

4    relevant work, has a transferable skill, and is limited to light work (when Medical-

5    Vocational Rule 202.07 governs the case), will be found disabled under 20 C.F.R §

6    404, Subpt. P, App. 2, Rule 202.00(c), unless his skills are transferrable to a

7    "significant range" of semi-skilled or skilled work that is within the individual's

8    functional capacity of work.  *Maxwell*, at 1131.  The *Maxwell* Court held that two

9    jobs does not constitute "a significant range of work," noting that the Rule

10   202.00(c) points out that the most difficult problem that a Plaintiff of advanced age

11   faces is that of adapting to a new job.  *Id.* (internal quotations omitted).

12   As explained *supra*, for the ALJ to find the Plaintiff has transferrable skills

13   to a "significant range of work," more than two jobs must be identified.  The ALJ

14   committed harmful error by identifying only two jobs.

15   Although the ALJ's error under *Maxwell* is sufficient for remand, Plaintiff

16   also contends that given the ongoing effects of his brain injury, Plaintiff no longer

17   has transferable skills and should be disabled pursuant to Medical-Vocational Rule

18   202.06.  ECF No. 18 at 18.  Additionally, Plaintiff contends that one or both of the

19   jobs the VE gave require adjusting to different work setting and industries, the VE

20   did not break down the number of jobs, if any, that existed in Plaintiff's previous

1    industry, and that the job of extrusion-press operator requires being in the presence

2    of hazardous machinery, which is contrary to Plaintiff's RFC.  ECF No. 18 at 18-

3    20.

4           Upon questioning by Plaintiff's representative at the hearing, the VE

5    testified that for the job of electric tool repairer, some of the jobs could be in a

6    different industry.  Tr 68-69.  As Plaintiff points out, the VE was unable to provide

7    the number of jobs available in each industry, noting "I could, but it would take me

8    awhile to break it down … it doesn't pull that up right now."  Tr. 68-70.  As noted

9    *supra*, under the Regulations for a finding of transferability of skills to light work

10   for persons of advanced age who are closely approaching retirement age (age 60 or

11   older), there must be very little, if any, vocational adjustment required in terms of

12   tools, work processes, work settings, or the industry.  Here, the ALJ found that,

13   based on VE testimony, both jobs meet this requirement, Tr. 24, but the ALJ did

14   not reconcile the VE's testimony with her responses to Plaintiff's questions at the

15   hearing, which show she did not know how many work settings or industries the

16   jobs she provided exist in.  Plaintiff points out that the VE testified that the job of

17   electrical tool repair could be in "any industry," and did not break down the

18   number of jobs, if any, that existed in Plaintiff's previous industry; and although

19   she testified that she could break down the information, the ALJ did not ask her to

20   do so.

ORDER - 13

Additionally, based on VE testimony, the job of extrusion press operator appears to exceed Plaintiff's RFC.  At the hearing, Plaintiff asked the VE if these jobs require machinery that could cause bodily harm if one had tremor or balance issues and she replied "yes."  Tr. 71.  Earlier, Dr. Washburn, the medical expert whose testimony the ALJ found persuasive and adopted for Plaintiff's RFC, testified the only sequala he saw from the TBI were "some balance issues" and that "due to head injury and balance issues" he would not recommend Plaintiff being exposed to hazards," including, as the ALJ clarified with Dr. Washburn, "no ladders, scaffolds, no unprotected heights, no hazardous machinery."  Tr. 44-45.  While Defendant contends that "only Plaintiff's attorney characterized the machinery of this job as hazardous," ECF No. 19 at 19 (citing Tr. 71), the hearing transcript shows Plaintiff asked the VE if someone had "tremor or balance issues" could the machinery used in these jobs cause bodily harm or "actually could really hurt you" and the VE testified "yes … [b]ased on what I have observed and actually looking at these two types of positions, yes, it could."  Tr. 70-71.  One or both jobs appear to require exposure to hazardous machinery.

Based on the VE's testimony, it appears that at least one job requires more than little, if any, adjustment in terms of work settings, or the industry, and at least of one of the jobs is incompatible with Plaintiff's RFC, which requires no exposure to hazardous machinery.  "Ambiguous evidence, or the ALJ's own finding that the

ORDER - 14

record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Given the VE's testimony in response to the questioning of Plaintiff's representative, described *supra*, the ALJ had a duty to clarify whether, in fact, one or both jobs required exposure to hazardous machinery, and, if available, how many of the jobs the VE provided required a change of industry or work setting.

The ALJ committed harmful error by identifying only two jobs and finding that jobs existed in significant numbers that Plaintiff could perform. Furthermore, based on the VE testimony, which the ALJ failed to reconcile at the hearing, it appears to the Court that these jobs also exceeded Plaintiff's RFC and/or require a change of industry or work setting.

**B. Plaintiff' Symptom Claims**

Plaintiff contends the ALJ improperly rejected Plaintiff's symptom complaints. ECF No. 18 at 14-17. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that

ORDER - 16

1    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

2    side effects of any medication an individual takes or has taken to alleviate pain or

3    other symptoms; 5) treatment, other than medication, an individual receives or has

4    received for relief of pain or other symptoms; 6) any measures other than treatment

5    an individual uses or has used to relieve pain or other symptoms; and 7) any other

6    factors concerning an individual's functional limitations and restrictions due to

7    pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

8    404.1529I, 416.929I.  The ALJ is instructed to "consider all of the evidence in an

9    individual's record," to "determine how symptoms limit ability to perform work-

10   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

11         The ALJ found that Plaintiff's medically determinable impairments could

12   reasonably be expected to cause the alleged symptoms, but that Plaintiff's

13   statements concerning the intensity, persistence, and limiting effects of his

14   symptoms were not entirely consistent with the evidence.  Tr. 20.

15         *1. Inconsistent Objective Medical Evidence*

16         The ALJ found the objective medical evidence does not support Plaintiff's

17   symptom claims.  Tr. 20-22.  An ALJ may not discredit a claimant's symptom

18   testimony and deny benefits solely because the degree of the symptoms alleged is

19   not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

20   857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

1    *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

2    However, the objective medical evidence is a relevant factor, along with the

3    medical source's information about the claimant's pain or other symptoms, in

4    determining the severity of a claimant's symptoms and their disabling effects.

5    *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

6        The ALJ found the objective medical evidence does not fully support the

7    level of limitation claimed by Plaintiff.  Tr. 20-21.  The ALJ provides a paragraph

8    summary of the medical evidence relating to Plaintiff's April 2018 fall and

9    traumatic brain injury, noting that "CT of the brain showed a left inferior

10   intracerebral hemorrhage with his underlying subdual hemorrhage consistent with

11   a contusive hemorrhage," and that Plaintiff fell again in the hospital, resulting in

12   enlargement of the hematoma such that he required surgery evacuation of the

13   hematoma.  Tr. 20-21 (citing Tr. 434).[3]

14       The ALJ does not discuss intracerebral hemorrhage again in the decision,

15   although medical records continually refer to Plaintiff as having had a TBI and

16   some kind of stroke; his primary care provider, for example, refers to it as a

17   hemorrhagic stroke in her medical source statement. Tr. 638.  Additionally, the

18   _____

19   [3] Although the ALJ cited Tr. 434; the relevant information appears to be located at

20   Tr. 435.

April 27, 2018 neurology consult the ALJ cites to when summarizing Plaintiff's

2018 fall and injury, *supra*, also shows the neurologists impression that Plaintiff

had "a fall two days ago.  Now awakens with an aphasia due to a left temporal

hemorrhage which seems contusive with an associated subdural hemorrhage."  Tr.

435.  The neurologist noted "stroke scale is 8 mostly due to his aphasia" and

ordered him "admitted to [the] ICU for close observation, given the low lying

location of his hemorrhage.  At this point, does not require surgical intervention

though we will monitor closely."  Tr. 435; *see* Tr. 426 (April 27, 2018afternoon

CT scan), Tr. 430 (April 27, 2018 morning CT scan of the head; and CT

angiogram neck and head), Tr. 421 (April 31, 2018 CT head stable parenchymal

and subdural hematomas compared to CT April 27, 2018).  The neurologist noted

Plaintiff was "clearly aphasic … unable to follow any commands or formulate any

coherent speech."  Tr. 435.  He was hospitalized, but had another fall in the

hospital, which worsened his head injuries requiring surgery for drainage of the

subdural hematoma; he underwent left front burr hole craniotomy for evacuation of

the hematoma, with drain placement that day.  *See* Tr.  410, 412-13, 432.  The

doctor noted he was "aphasic and unable to give informed consent" and his

daughter agreed to the procedure.  Tr. 432.  He was hospitalized until May 17,

2018 with extensive time in the ICU, which the ALJ does not discuss.  Tr. 437.

ORDER - 19

1    The ALJ concludes his summary of the evidence by noting that after

2  hospitalization Plaintiff was transferred to a rehabilitation facility where "discharge

3  report dated June 27, 2018, notes the [Plaintiff] made significant improvement in

4  terms of his balance and ability to ambulate" as he was "noted to be taking two 1.5

5  mile walks per day and ambulating without assistance ... although he continued to

6  have some word finding/communication issues."  Tr. 21 (citing Tr. 445-46).

7  However, the records the ALJ cites to on June 27, 2018 are not the discharge

8  summary from his treatment at inpatient rehabilitation, but a treatment note from

9  his third visit with outpatient physical therapy, where the physical therapist did not

10  note he was walking 1.5 miles a day, she noted he "was walking more, two 1.5

11  miles walks *yesterday*."  Tr. 445-446.  However, she also noted he had not been

12  cleared for driving, he reported balance was still "challenging," and that he was in

13  physical therapy for "neuromuscular reeducation" including exercises for standing

14  balance, gait training (where he was noted to be veering off the path); and that his

15  physical therapy goals included "improve gait speed to at least 1.92 mph in order

16  to demonstrate meaningful detectable change in speed and progression towards

17  community ambulation speeds."  She noted he was "challenged with timed

18  activities and coordination activities with cues for increased speeds." *Id.* The ALJ's

19  characterization of this report is not supported by substantial evidence.

20

1       Plaintiff was hospitalized from April 27 through May 17th, 2018, then

2   admitted to inpatient rehabilitation from May 17 through May 24, 2018.  *See* Tr.

3   443-44, 437, 508.  The admission and discharge summaries from inpatient

4   rehabilitation shows he was admitted after his hospitalization with diagnoses of

5   intracerebral hemorrhage and subdural hematoma and was admitted to the rehab

6   facility to "address his diagnoses, which are complicated by [hypertension],

7   nicotine dependence, alcohol dependence, encephalopathy, and severe protein

8   calorie malnutrition."  Tr. 501.  Neurological findings upon admission were noted

9   as "acute on chronic subdural hematoma status post burr hole and drain,

10  intraparenchymal hemorrhage, traumatic brain injury" along with

11  "encephalopathy; likely multifactorial including TBI delirium, status post alcohol

12  withdrawal."  Tr. 502.  He was started on medication for "cognitive recovery,

13  agitation, sleep wake cycle regulation."  Discharge planning noted stable

14  neurologic exam, strength within normal limits, with good static balance, fair

15  dynamic balance, but severe impairment in gait with narrow base of support,

16  moderate impairment in gait with eyes closed, and mild impairment on steps,

17  noting "he must use a rail."  Tr. 509-12.

18      While the ALJ focuses on the report he walked 1.5 miles twice on one day,

19  *supra*, other physical therapy records show more mixed findings.  For example,

20  physical therapy records from his fifth visit, July 25, 2018 show diagnosis of

ORDER - 21

"impaired bilateral lower extremity strength, static and dynamic balance following ICH, SDH limiting mobility." Tr. 452. The physical therapist also noted Plaintiff's report that as "the day gets later he will become less coordinated, move slower and have more trouble with balance." *Id.* The therapist reported that while his balance improved and he continued to make gains, he "can perform walking on treadmill with use of only [one upper extremity] only as long as he is not distracted and no faster than [one] mph, once distracted [Plaintiff] begins to lose balance and require use of both upper extremities in order to maintain gait speed. Tr. 454. Primary care records from 2019 also show he attempted to return to work and was unable to continue; he reported he was "having a hard time speaking due to the noise and commotion at work" along with reports of continued balance issues and objective findings including irregular gait and intention tremor. *See, e.g.*, Tr. 604, 605, 607, 613.

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). The ALJ's brief summary of evidence tends to support the ALJ's conclusions when the longitudinal record shows more mixed findings, such as evidence of continuing balance and/or gait issues and tremor throughout the period

at issue, which are consistent with his testimony and necessary for analysis of his transferable skills at step five.  The ALJ's summary of medical evidence and conclusory statements fail to meet the burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 644, 675 (9th Cir. 2017) (internal citations omitted).  In citing portions of the record that show milder examination findings while the longitudinal record shows more mixed results, the ALJ's characterization of the record is not supported by substantial evidence.  The ALJ's conclusion that Plaintiff's symptom testimony is not consistent with objective medical evidence is therefore not supported by substantial evidence.

### 2.  Return to work

The ALJ found that the Plaintiff's ability to work at substantial gainful activity levels for several months during the relevant period are wholly inconsistent with Plaintiff's claims of disability.  Tr. 21.  Working with an impairment supports a conclusion that the impairment is not disabling.  *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Bray*, 554 F.3d at 1227 (seeking work despite impairment supports inference that impairment is not disabling).  However, short-term work, which does not demonstrate the ability to sustain substantial gainful employment, may be considered an unsuccessful work attempt instead of

ORDER - 23

1   substantial gainful activity.  *Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 690, 694

2   (9th Cir. 1999); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

3   ("Several courts, including this one, have recognized that disability claimants

4   should not be penalized for attempting to lead normal lives in the face of their

5   limitations.").  Under the Regulations, work of six months or less will be

6   considered an unsuccessful work attempt if the Plaintiff stopped working because

7   of his impairment.  20 C.F.R §§ 404.1574(c)(3), 416.974(c)(3).

8        Defendant declines to defend the ALJ's rejection of Plaintiff's symptom

9   complaints based upon his ability to return to work for six months during the

10  period at issue, because the ALJ found it was an unsuccessful work attempt at step

11  one.  ECF No. 19 at 7-8; Tr. 18.  At the hearing, the ALJ asked him why he

12  stopped working again after he went back to work in late 2018 through early 2019.

13  Tr. 40.  Plaintiff testified "I just couldn't do it.  There's [a] communication

14  problem"; the ALJ asked if it was physical or mental, and Plaintiff testified "[a]

15  little bit of both.  I couldn't communicate.  I couldn't tell, tell [sic] what I needed,

16  and I could not understand what they were saying."  *Id.*

17       The ALJ determined this work activity was not substantial gainful activity

18  and constituted an unsuccessful work attempt, because Plaintiff had to stop it

19  within six months due to his impairments.  Tr. 18.  Elsewhere in the decision,

20  however, the ALJ uses evidence of Plaintiff's attempt to return to work to reject his

ORDER - 24

symptom claims. *See* Tr. 21-22.   Given Defendant has not defended the ALJ's

rationale, the Court concludes that the ALJ's finding that Plaintiff's ability to work

at substantial gainful activity levels during the relevant period is inconsistent with

Plaintiff's symptoms claims is not supported by substantial evidence.

   3. *Activities of Daily Living*

   The ALJ found Plaintiff's activities of daily living were inconsistent with his

symptom claims.  Tr. 19-22.  The ALJ may consider a claimant's activities that

undermine reported symptoms. *Rollins*, 261 F.3d at 857.  If a claimant can spend a

substantial part of the day engaged in pursuits involving the performance of

exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when

the claimant reports participation in everyday activities indicating capacities that

are transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1112-13.

   The ALJ found that Plaintiff has "rather high functioning activities of daily

living … he is able to play golf, mow the lawn using a riding lawn mower, put

tools away, pay bills, drive, complete household chores, prepare meals etc."  Tr.

21.  However, the ALJ does not provide any analysis of how such activities are

ORDER - 25

1   inconsistent with Plaintiff's allegations and, as Plaintiff points out, he testified he

2   has only golfed twice since his injury, riding in a gold cart driven by someone else

3   and only playing nine holes, and that due to fatigue he takes multiple days to cut

4   his grass with a riding mower.  ECF No. 18 at 16-17; *see* Tr. 75-78.  Records show

5   he was not released to drive until March 2019, during the period of his

6   unsuccessful work attempt, *see* Tr. 620, but at the hearing he testified he later "got

7   scared of driving – didn't feel focused enough to drive" and that he fell in the tub

8   and was afraid to drive.  Tr. 79-81, 85.  He also testified he "mowed the lawn

9   maybe three times this year.  Usually, I mowed it every week."  Tr. 78-80.

10  Records also show he reported "his wife primarily managed the finances since his

11  stroke."  Tr. 576.  The ALJ's conclusion that Plaintiff's activities were inconsistent

12  with his symptom claims is not supported by substantial evidence.

13  **C. Medical Opinion Evidence**

14          Plaintiff contends the ALJ erred in his consideration of the opinion of Ebony

15  Graham, ARNP.  ECF No. 18 at 9-12.

16          As an initial matter, for claims filed on or after March 27, 2017, new

17  regulations apply that change the framework for how an ALJ must evaluate

18  medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

19  *Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

20  C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer

ORDER - 26

"give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

ORDER - 27

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit recently addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at *3-4. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical

source has examined the claimant or merely reviewed the claimant's records. *Id.* at *6. However, the ALJ is not required to make specific findings regarding the relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

On September 16, 2019, Ms. Graham, a treating provider at Plaintiff's primary care clinic, provided a medical source statement on Plaintiff's behalf. Tr. 638-40. She notes Plaintiff had a stroke in April 2018 (noting under treatment that this was a hemorrhagic stroke) with hospitalization for a month and physical therapy and speech therapy for two months. Tr. 638. She opined his prognosis was "stable at this time." Tr. 639. While she indicated work would not cause his condition to deteriorate, she also explained that "mentally, it is difficult for [Plaintiff] to speak thoughts – aphasic symptoms reported." *Id.* She opined if he were attempting to work a 40 hour a week schedule it was more probable than not that he would miss an average of four or more days per month due to his "balance impairment, hearing, speech and intermittent sight impairment" and "mental stress due to inability to express self at times of need." *Id.* She opined he was limited to light work and that based on the cumulative effect of all limitations he would likely be off task and unproductive 21 to 30 percent during a 40-hour workweek. She

ORDER - 29

1    opined these limitations have existed since April 2018.  *Id.*  The ALJ found her

2    opinion unpersuasive.  Tr. 23.

3         As the case is being remanded for immediate benefits on other grounds, the

4    Court declines to further address this issue.

5    **D. Step Three**

6         Plaintiff contends the ALJ erred by failing to conduct an adequate analysis at

7    step three and failing to consider Listings 5.08 and 11.18.  ECF No. 18 at 12-14.

8    At step three, the ALJ must determine if a claimant's impairments meet or equal a

9    listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of Impairments

10   "describes for each of the major body systems impairments [which are considered]

11   severe enough to prevent an individual from doing any gainful activity, regardless

12   of his or her age, education or work experience."  20 C.F.R. § 404.1525.  "Listed

13   impairments are purposefully set at a high level of severity because 'the listings

14   were designed to operate as a presumption of disability that makes further inquiry

15   unnecessary.'"  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing

16   *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict

17   standards because they automatically end the five-step inquiry, before residual

18   functional capacity is even considered."  *Kennedy,* 738 F.3d at 1176.  If a claimant

19   meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. §

20   404.1520(a)(4)(iii).

1    "To *meet* a listed impairment, a claimant must establish that he or she meets

2    each characteristic of a listed impairment relevant to his or her claim." *Tackett,*

3    180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d).  "To *equal* a

4    listed impairment, a claimant must establish symptoms, signs and laboratory

5    findings 'at least equal in severity and duration' to the characteristics of a relevant

6    listed impairment . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting

7    20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple impairments and

8    none of them individually meets or equals a listed impairment, the collective

9    symptoms, signs and laboratory findings of all of the claimant's impairments will

10   be evaluated to determine whether they meet or equal the characteristics of any

11   relevant listed impairment."  *Id*.  However, "[m]edical equivalence must be based

12   on medical findings," and "[a] generalized assertion of functional problems is not

13   enough to establish disability at step three."  *Id*. at 1100 (quoting 20 C.F.R. §

14   404.1526(a)).

15        The claimant bears the burden of establishing his impairment (or

16   combination of impairments) meets or equals the criteria of a listed impairment.

17   *Burch*, 400 F.3d at 683.  "An adjudicator's articulation of the reason(s) why the

18   individual is or is not disabled at a later step in the sequential evaluation process

19   will provide rationale that is sufficient for a subsequent reviewer or court to

20   determine the basis for the finding about medical equivalence at step 3."  Social

ORDER - 31

1    Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27,

2    2017).

3         Here, the ALJ found that Plaintiff's impairments and combinations of

4    impairments did not meet or equal any listings.  Tr. 19.  As the case is being

5    remanded for immediate benefits on other grounds, the Court declines to address

6    this issue.

7    **E.  Remedy**

8         Plaintiff urges this Court to remand for an immediate award of benefits.

9    ECF No. 18 at 20.  "The decision whether to remand a case for additional

10   evidence, or simply to award benefits is within the discretion of the court."

11   *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*,

12   761 F.2d 530 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for

13   error, the Court "ordinarily must remand to the agency for further proceedings."

14   *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379

15   F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is

16   to remand to the agency for additional investigation or explanation"); *Treichler v.*

17   *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a

18   number of Social Security cases, the Ninth Circuit has "stated or implied that it

19   would be an abuse of discretion for a district court not to remand for an award of

20   benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations

ORDER - 32

1  omitted).  Under the credit-as-true rule, where (1) the record has been fully

2  developed and further administrative proceedings would serve no useful purpose;

3  (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence,

4  whether claimant testimony or medical opinion; and (3) if the improperly

5  discredited evidence were credited as true, the ALJ would be required to find the

6  claimant disabled on remand, the Court will remand for an award of benefits.

7  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three

8  prongs have been satisfied, the Court will not remand for immediate payment of

9  benefits if "the record as a whole creates serious doubt that a claimant is, in fact,

10  disabled."  *Garrison*, 759 F.3d at 1021.  Here, the Court finds that each of the

11  credit-as-true factors is satisfied and that remand for the calculation and award of

12  benefits is warranted.

13         As to the first element, the record has been fully developed and there is no

14  indication further proceedings would serve any purpose.  Administrative

15  proceedings are generally useful where the record "has [not] been fully

16  developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and

17  ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation of further evidence ...

18  may well prove enlightening" in light of the passage of time, *I.N.S. v. Ventura*, 537

19  U.S. 12, 18 (2002),  *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996)

20  (remanding for ALJ to apply correct legal standard, to hear any additional

ORDER - 33

evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill*, 12 F.3d at 918, 919 (9th Cir. 1993) (same); *Bunnell*, 947 F.2d at 348 (en banc) (same).  Here, the ALJ identified only two jobs which the Ninth Circuit has determined is insufficient.  The ALJ also failed to reconcile the VE's testimony concerning whether one or both jobs the VE provided exceed Plaintiff's RFC, and whether either job required adjustment to a new industry or work environment, despite Plaintiff's representative raising these issues at the hearing.  Based on the VE's testimony and discussion with Plaintiff's representative at the hearing, as discussed *supra* in the findings concerning step five, it appears to the Court that these jobs exceed Plaintiff's RFC and/or require a change of industry or work setting.  The ALJ had a duty to reconcile the VE's testimony in order to meet his burden at step five and failed to do so when the issue was properly raised by Plaintiff at the hearing.  Furthermore, if the VE had additional jobs she would have provided them.  Plaintiff points out that a remand here offers the Administration another chance to improperly deny the claim.  Given the harmful error at step five, the Court finds the record is fully developed and further proceedings would not serve a useful purpose.

As discussed *supra*, along with the errors at step five, the ALJ also failed to provide legally sufficient reasons, supported by substantial evidence, to reject Plaintiff's testimony/symptom claims.  Therefore, the second prong of the credit-

ORDER - 34

as-true rule is met. The third prong of the credit-as-true rule is satisfied because if Plaintiff's statements were credited as true, the ALJ would be required to find Plaintiff disabled for the entire relevant period.

Finally, the record as a whole does not leave serious doubt as to whether Plaintiff is disabled. *See Garrison*, 759 F.3d at 1021. There is evidence of TBI and brain hemorrhage/stroke with residuals including balance issues and aphasia, which the ALJ failed to adequately discuss. While the ALJ noted Plaintiff's history of alcoholism, the ALJ did not find alcohol abuse was a severe impairment or that there was current evidence of alcohol abuse, and Plaintiff testified he was sober. On this record, there is therefore no indication remand is required for DAA analysis.

Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler*, 775 F.3d at 1100 (internal citations omitted). In *Vasquez*, the Ninth Circuit exercised its discretion and applied the "credit as true" doctrine because of claimant's advanced age and "severe delay" of seven years in her application. *Vasquez*, 572 F.3d at 593-94. Here, Plaintiff was 59 years old and 11 months at his alleged onset date, and he changed age categories from advanced age to closely approaching retirement age (60 or older)

ORDER - 35

less than one month after his alleged onset date; he has waited over four years for benefits.  Considering Plaintiff's age and the delay from the date of the application, harmful error by the ALJ, failure to discuss relevant evidence supporting disability along with some misconstrual of evidence in support of nondisability, all described *supra*, it is appropriate in this case for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

ORDER - 36

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED June 3, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 37